UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KEVIN MILLETTE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:16-cr-00004-NT-1 |
| | ) | 2:17-cv-00105-NT |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Kevin Millette moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 40.) Following a guilty plea, Petitioner was convicted of possession of child pornography; the Court sentenced Petitioner to 120 months in prison, to be followed by seven years of supervised release. (Judgment, ECF No. 37 at 1-3.)

In Petitioner's section 2255 motion, he contends he is entitled to section 2255 relief based on an alleged Fourth Amendment violation, citing *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016).[1] (Motion at 13-15.) Petitioner also alleges, in a motion to supplement filed more than a year after his judgment became final, that counsel failed adequately to advise him, before he pled guilty, on his right to be charged by a grand jury indictment, his right to challenge evidence on Fourth Amendment grounds, and his right to

---

[1] In *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), the Tenth Circuit concluded that the National Center for Missing and Exploited Children (NCMEC) is a governmental entity or agent for purposes of the Fourth Amendment analysis in that case.

appeal from the conviction or sentence; he also alleges counsel failed adequately to investigate defenses and information relevant to mitigation. (Motion to Supplement, ECF No. 55 at 1-3; Reply, ECF No 65 at 1-2.) He alleges that as a consequence of counsel's performance, his plea was not knowing and voluntary. (Motion, ECF No. 55 at 3.)

Following a review of Petitioner's motion, the Government's request for dismissal, and the record, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 7, 2015, before obtaining a search warrant, a Homeland Security Investigations (HSI) special agent examined an image that had been provided by Google, Inc., as part of a report from Google to the National Center on Missing and Exploited Children (NCMEC) on NCMEC's CyberTipline. (Affidavit, ECF No. 3-1 at 18-22.) NCMEC had in turn forwarded Google's report to the Maine State Police Computer Crimes Unit, which sent the report to the HSI special agent. (*Id.* at 20.) The HSI special agent included a description of the image within his affidavit, dated November 10, 2015, in support of a search of the Google email account from which the image had been uploaded, for evidence of transportation of child pornography. (*Id.* at 20, 26.)

> The HSI special agent stated in the November 10, 2015, affidavit:
>
> According to the report, Google, Inc. had reported that on October 12, 2015, at approximately 7:19 p.m. EST, an individual using the email address . . . had uploaded and attached an image depicting child pornography to an email

within the Gmail system. NCMEC further reported that Google had categorized the image upon sending it to NCMEC as category "A1," meaning that, according to Google, it depicted a prepubescent minor engaged in a sex act. Additionally, NCMEC reported that Google could not determine whether the email to which the image had been attached had actually been sent by the user. . . .

(*Id.* at 20.)

The HSI special agent also included in the affidavit a telephone number that Google reported had been provided by the person using the email account at issue, as well as several IP addresses used to access the account. (*Id.*) The HSI special agent stated that, in his experience, several of the IP addresses were associated with Maine locations, including Biddeford, Standish, Raymond, Lee, and Brownfield. (*Id.* at 21.)

The HSI special agent reported that he entered into Facebook's search bar the telephone number Google provided for the account, and he "found it to be associated with the single profile of a Kev Millette of Alfred, Maine. Millette's profile described him as living in Alfred, Maine, and as being employed at [a named store] in Biddeford." (*Id.* at 21.)

The agent also recounted the results of a search of the Maine sex offender registry:

> I subsequently searched the Maine Sex Offender Registry, and found that an individual named Kevin Millette of Alfred, Maine was listed on the registry; according to the registry, Millette was employed at [the named store] in Biddeford. Additionally, the photo provided in the registry appeared to match the Kev Millette found on Facebook. According to the registry, Millette's conviction was for possession of sexually explicit material of a minor under 12, in violation of 17-A MRSA 284(1)(C).

(*Id.* at 21-22.) A search warrant issued, and Google sent the results to the HSI special agent. (*Id.* at 2.) Based in part on the results of the search conducted pursuant to the

3

November 10, 2015, warrant, the HSI special agent obtained a warrant on November 16, 2015, for a search of records and items at Petitioner's residence. (*Id.* at 1- 4, 14.)

On November 16, 2015, Petitioner was charged by complaint with transportation of child pornography, pursuant to 18 U.S.C. §§ 2252A(a)(1), (b)(1); 2256(8)(A). (Complaint, ECF No. 3.) The HSI special agent's affidavit, dated November 16, 2015, was filed in support of the complaint, an arrest warrant, and a search warrant for a search of Petitioner's residence. (Affidavit at 1-2, 6, 14.) The agent's November 16, 2015, affidavit included, among other things, a description of the results of the Google search, and it included the November 10, 2015, affidavit as an attachment. (*Id.* at 2-4, 18-29.)

In January 2016, Petitioner entered into an agreement with the Government to plead guilty to possession of child pornography, pursuant to 18 U.S.C. § 2252A(a)(5)(B). (Plea Agreement, ECF No. 26 at 1.) The plea agreement included an appeal waiver that stated in relevant part: "Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal . . . Defendant's guilty plea and any other aspect of his conviction in the above-captioned case . . . ." (*Id.* at 3.)

Petitioner waived indictment, and, following the plea colloquy, the Court accepted Petitioner's guilty plea. (Hearing Tr., ECF No. 62 at 12-13, 25-26.) In the plea colloquy, the Court informed Petitioner among other things, that if he pled guilty, he would be giving up several trial rights, including the right to object to evidence: "Your lawyer would have the opportunity to cross-examine any of the Government's witnesses and to object to any of

4

the evidence that the Government offered." (*Id.* at 16.) The Court asked Petitioner if he understood this right and the other trial rights the Court explained that he would be giving up if he pled guilty; Petitioner told the Court he understood. (*Id.* at 16-17.)

Regarding the right of appeal, the Court informed Petitioner: "If I proceed to enter a judgment of guilty and sentence you on the basis of your guilty plea, if all that happens, except for very limited circumstances you will have no right of appeal of your conviction. Do you understand?" (*Id.* at 17.) Petitioner replied: "Yes." (*Id.*)

The Court entered the judgment and sentence on June 6, 2016. (Judgment at 1-2.) The Court noted the conviction carried a mandatory minimum prison term, and the Court imposed a 120-month sentence. (Statement of Reasons, ECF No. 38 at 1; Judgment at 2.)

Petitioner states that he placed his section 2255 motion in the prison mailing system on March 20, 2017. (Motion, ECF No. 40 at 12.) Petitioner filed a motion to supplement on November 20, 2017. (Motion, ECF No. 55 at 1.)

The Government does not contest the timeliness of the section 2255 motion. (Response, ECF No. 50 at 2 n.2.) The Government, however, argues the claims in Petitioner's motion to supplement are time-barred and do not relate back to the section 2255 motion. (Response, ECF No. 56 at 2.) The Court granted the motion to supplement without prejudice to the Government's right to argue the timeliness issue as part of its response to the section 2255 motion, and the Court accepted the motion to supplement as an amendment to the section 2255 motion.[2] (Order, ECF No. 57 at 1-2.)

---

[2] The initially-filed 28 U.S.C. § 2255 motion (ECF No. 40) and the motion to supplement (ECF No. 55) thus together comprise the amended section 2255 motion. (Order, ECF No. 57 at 2.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993); *United States v. Isom*, 85 F.3d 831, 838 (1st Cir. 1996) (applying *McGill* to a case involving a plea).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*,

308 F.3d at 127-28. The Supreme Court has noted that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

An allegation of ineffective assistance of counsel may excuse a procedural default, but only if the petitioner demonstrates both "that counsel's representation fell below an objective standard of reasonableness," and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). "As we held in [*Hill v. Lockhart*, 474 U.S. 52 (1985)], when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, --- U.S. ---, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill*, 474 U.S. at 59).

In *Hill*, the Supreme Court held that the district court did not err in declining to hold a hearing on the petitioner's ineffective assistance claim, because the petitioner failed to allege in the petition that if counsel had provided correct information about his parole eligibility date, he would have pleaded not guilty, and he would have insisted on going to trial. 474 U.S. at 60; *see United States v. Dunfee*, 821 F.3d 120, 128 (1st Cir. 2016) (per curiam) ("Dunfee must show that, first, counsel's performance in advising his guilty plea fell below the standard of performance of reasonable proficient counsel, and second, that by such inadequate performance, Dunfee was induced to enter a guilty plea which he otherwise would not have entered.") (quotation marks, citation, and alterations omitted).

7

A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test, because a failure to meet either prong will undermine the claim. *Strickland,* 466 U.S. at 697. Furthermore, if a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

### B. Claims and analysis

Petitioner contends NCMEC acted as a government entity or agent and conducted a warrantless search in violation of the Fourth Amendment by allegedly opening Petitioner's email and forwarding the search results to law enforcement. (Motion, ECF No. 40 at 4, 13.) Petitioner also contends the evidence discovered in the search conducted pursuant to the November 10, 2015, warrant violated the Fourth Amendment; the evidence discovered in the search conducted pursuant to the November 16, 2015, warrant was the "fruit of the poisonous tree;" and the evidence from both searches, therefore, was inadmissible under the exclusionary rule.[3] (*Id.* at 15.) In Petitioner's section 2255 motion (ECF No. 40), he asserts a Fourth Amendment claim; in the motion to supplement (ECF No. 55), Petitioner asserts, among other claims, ineffective assistance for counsel's alleged failure to advise him adequately regarding the Fourth Amendment argument he raises in the section 2225 motion.

---

[3] This recommended decision assumes Petitioner intended to include the Google search in his Fourth Amendment challenge, as it appears Petitioner does not contest the HSI special agent's statement that NCMEC forwarded the files to law enforcement. (*Id.*; Affidavit at 20.) In other words, it appears Petitioner seeks section 2255 relief based an alleged Fourth Amendment violation he argues is evident on the factual record as it stands.

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." US. Const. amend IV. "As a prophylaxis against unreasonable searches, we apply an exclusionary rule that 'prohibits introduction into evidence of tangible materials seized during an unlawful search . . . and of testimony concerning knowledge acquired during an unlawful search.'" *United States v. Flores*, 888 F.3d 537, 545 (1st Cir. 2018) (quoting *Murray v. United States*, 487 U.S. 533, 536 (1988) (citation omitted)).

Petitioner did not raise a Fourth Amendment claim in his criminal case, and therefore, to the extent he asserts the Fourth Amendment claim independent of his ineffective assistance claim, the Fourth Amendment claim is procedurally defaulted. *See Berthoff*, 308 F.3d at 127-28; *Arroyo v. United States*, 195 F.3d 54, 54-55 & n.1 (1st Cir. 1999) (noting that "[I]n *Stone v. Powell*, [428 U.S. 465] (1976), the Supreme Court said that habeas corpus relief to challenge a state conviction could not be based solely on a Fourth Amendment violation because such evidence remains reliable and any increase in deterrence effected by the exclusionary rule would be slight," and concluding the Court need not decide whether *Stone* applies to section 2255 motions); *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (concluding that "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255" when the

petitioner "had an opportunity for full and fair litigation" of the claim at trial and on direct appeal).

A claim of ineffective assistance based on the failure to pursue a Fourth Amendment issue, however, is not precluded. *See Kimmelmann v. Morrison*, 477 U.S. 365, 368, 382-83 (1986) (concluding that *Stone* does not preclude a claim of ineffective assistance for "counsel's failure to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment"); *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008) (concluding that because a Fourth Amendment claim was "inextricably intertwined" with a claim of ineffective assistance for the failure to file a motion to suppress and the failure to advise the petitioner "properly regarding the viability of such a claim in connection with pleading guilty," the Court must evaluate the Fourth Amendment claim) (quotation marks omitted).

The Government raises the threshold issue of the timeliness of the ineffective assistance claims asserted in Petitioner's motion to supplement. (Response, ECF No. 56 at 2-3.) Petitioner filed the motion to supplement in November 2017, which was after the expiration of the one-year limitation period under section 2255(f)(1).[4] The judgment had

---

[4] Title 28 U.S.C. § 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of −
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

become final in June 2016. The claims set forth in the motion to supplement thus would be timely only to the extent they relate back, pursuant to Fed. R. Civ. P. 15(c), to the Fourth Amendment issue raised in the section 2255 motion.[5] *See Turner v. United States*, 699 F.3d 578, 585 (1st Cir. 2012) (noting "[t]he relation back provision in habeas petitions is strictly construed," and "amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended") (quoting *Moyle v. Felix*, 545 U.S. 644, 657 (2005)) (additional quotation marks omitted).

Here, the only claim that relates back to the section 2255 motion is the claim that counsel failed to advise Petitioner on the alleged Fourth Amendment violation. Petitioner's ineffective assistance claims relating to the grand jury, to the appeal from a decision on

---

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner did not appeal from the June 6, 2016, judgment, and therefore it became final 14 days later, when the time for filing a notice of appeal expired. *See* Fed. R. App. P. 4(b)(1)(A); *Clay v. United States*, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."). Subsections 2255(f)(2), (3), and (4) are not applicable to Petitioner's case. Furthermore, Petitioner alleges no facts that would support equitable tolling. *See Ramos-Martínez v. United States*, 638 F.3d 315, 322 (1st Cir. 2011) (concluding that applying the doctrine of equitable tolling in section 2255 cases when appropriate "comports with the reasoning" set forth in *Holland v. Florida*, 560 U.S. 631 (2010)).

[5] Fed. R. Civ. P. 15(c) states in relevant part: "An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; [or] (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out−or attempted to be set out−in the original pleading." Rule 15 "governs amendments to habeas petitions in a § 2255 proceeding." *United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005).

any issue other than the Fourth Amendment issue, and to any alleged failure to investigate any matters other than the Fourth Amendment issue, do not relate back, and, therefore, are untimely. *See id.*; *Cavitt*, 550 F.3d at 435.

Although the Fourth Amendment ineffective assistance claim relates back to Petitioner's initial section 2255 motion, Petitioner has not demonstrated either deficient performance or prejudice for counsel's failure to pursue the Fourth Amendment issue. *See Tse*, 290 F.3d at 465. Prejudice is lacking because Petitioner failed to demonstrate that if counsel had advised him properly, he would have pled not guilty. *See Lee*, 137 S. Ct. at 1965; *Hill*, 474 U.S. at 60. In fact, during the plea colloquy, the Court explained to Petitioner that he had the right to challenge the Government's evidence, and that by pleading guilty, he would forego the right; Petitioner acknowledged that he understood that by pleading guilty, he was giving up the rights the Court reviewed with him, including his right to contest the charge. (Hearing Tr. at 16-17.) *See Williams v. United States*, 858 F.3d 708, 717 (1st Cir. 2017) ("[E]ven if we generously assume that Petitioner did not waive his affirmative-misadvice claims, Petitioner suffered no prejudice from his attorney's alleged misadvice because the district court itself informed Petitioner that he faced immigration consequences.")

Prejudice is also lacking because the November 10, 2015, affidavit, upon which law enforcement secured the initial search warrant, contained sufficient facts to establish probable cause for the search, and thus Petitioner's underlying Fourth Amendment argument would have failed on the merits. *See United States v. Carrigan*, 724 F.3d 39, 45 (1st Cir. 2013) ("[W]e find that the district court correctly denied the motion to suppress

and that, therefore, Carrigan fails to show he suffered prejudice."), *abrogated on other grounds*, *United States v. Faust*, 853 F.3d 39, 49-50 (1st Cir. 2017); *United States v. Dessesaure*, 429 F.3d 359, 367 (1st Cir. 2005) ("[W]hen faced with a warrant containing information obtained pursuant to an illegal search, a reviewing court must excise the offending information and evaluate whether what remains is sufficient to establish probable cause.").

First, the initial affidavit was based on information derived from a tip from Google and NCMEC, which are reliable sources. *See United States v. Cameron*, 652 F. Supp. 2d 74, 82 (D. Me. 2009) (noting that "the affidavits [in support of a search warrant] reflect that the information was coming from Yahoo! and the NCMEC, and each carries significant indicia of reliability");[6] *United States v. Bartunek*, No. 8:17-cr-00028-RFR-SMB, 2017 WL 4564724, at *3, 2017 U.S. Dist. Lexis 167890, at *5-8 (D. Neb. Oct. 11, 2017) (noting that "courts routinely uphold searches based in part on information from service providers . . . without an exhaustive reliability review," citing *Cameron*, 652 F. Supp. 2d at 82, among other cases, with approval on the issue of reliability, and noting the investigating officer viewed the image identified by the service provider and corroborated the tip). Google is required by law to report apparent child pornography to NCMEC. (Affidavit at 19-20.) *See* 18 U.S.C. § 2258A. Google's report was specific, in that it identified the image as one that depicted a prepubescent minor

---

[6] In *United States v. Cameron*, 699 F.3d 621, 636-38 (1st Cir. 2012), the Court rejected Petitioner's argument that Yahoo! was acting as a government agent in violation of the Fourth Amendment when it conducted a warrantless search for child pornography in Petitioner's account.

engaged in a sex act. (Affidavit at 20.) These factors lend credence to the source, and are evidence of reliability. *See Cameron*, 652 F. Supp. 2d at 82; *but see United States v. Pippin*, No. 2:16-cr-00266-JCC, 2017 WL 3084431, at *5, 2017 U.S. Dist. Lexis 112594, at *13 (W.D. Wash. July 18, 2017) (noting that "whether NCMEC or Google opines that an image is child pornography is irrelevant," because "it is the affiant's verification of the tip−particularly the photos themselves−that matters").

In addition, the record lacks any reliable evidence to suggest that the NCMEC search or the examination of the image by law enforcement on November 7, 2015, exceeded the private party search conducted by Google.[7] Indeed, given that Google

---

[7] Petitioner relies on *Ackerman* and *United States v. Keith*, 980 F. Supp. 2d 33 (D. Mass. 2013). (Motion, ECF No. 40 at 14; Motion, ECF No. 55 at 3.) A central issue in *Ackerman*, *Keith*, and other cases in which courts have assessed whether NCMEC was a government agent for purposes of a Fourth Amendment analysis was whether NCMEC expanded the search beyond the private party search conducted by the source of the file provided to NCMEC. If the NCMEC search did not exceed the private party search, the NCMEC search would not violate the Fourth Amendment even if NCMEC was deemed to be a government agent.

In *Ackerman*, the Tenth Circuit applied the "private search" doctrine associated with *United States v. Jacobsen*, 466 U.S. 109 (1984). *Ackerman*, 831 F.3d at 1305-07. The Tenth Circuit explained that in *Jacobsen*, the Supreme Court held that the Fourth Amendment was not implicated because the governmental search at issue in *Jacobsen* did not exceed a previous search by a private entity. *Id.* at 1305 (citing *Jacobsen*, 466 U.S. at 111-12). The Tenth Circuit noted that in *Jacobsen*, "there was a 'virtual certainty' that (but for one thing) the government could have discovered 'nothing else of significance' in the package nor learned anything beyond what it had 'already . . . been told' by a private party." *Id.* (quoting *Jacobsen*, 466 U.S. at 119). In *Jacobsen*, the only additional information the government obtained was that a drug test performed on a white substance found in the package showed it was cocaine; the Fourth Amendment did not apply, because the defendant had "no 'legitimate privacy interest'" in information that the substance was contraband. *Id.* at 1305 (quoting *Jacobsen*, 466 U.S. at 123). The Tenth Circuit distinguished *Jacobsen* on the basis that in *Ackerman*, NCMEC expanded AOL's private party search because, in addition to opening the attachment that had been the subject of the private party search by AOL's automated filter for hash value, NCMEC also opened an email and three attachments that AOL had not opened or filtered. *Id.* at 1294, 1305-06.

In *Ackerman*, the Court noted it need not, and it did not, decide a different scenario in which NCMEC opens only a file or files that the private party reporting entity identifies solely by an automated filter for hash value. "Could the government have argued that, in *that* case, NCMEC's actions didn't risk exposing any private information beyond what AOL had already reported to it? Or might even that have

14

reported the image as in the "A1" category, which meant that the image depicted a prepubescent minor engaged in a sex act, the record evidence strongly suggests that the

---

risked exposing new and protected information, maybe because the hash value match could have proven mistaken (unlikely if not impossible) or because the AOL employee who identified the original image as child pornography was mistaken in his assessment (unlikely if maybe more possible)?" *Id.* at 1306.

In *Keith*, the District Court for the District of Massachusetts decided the issue that the Tenth Circuit later discussed as a hypothetical scenario in *Ackerman*. In *Keith*, the Court concluded that NCMEC expanded AOL's search in violation of the Fourth Amendment when NCMEC opened and reviewed an image file that AOL had reported to NCMEC based on AOL's use of a hash value filter. 980 F.Supp. 2d at 42-43 ("[M]atching the hash value of a file to a stored hash value is not the virtual equivalent of viewing the contents of the file," and "[t]hat is surely why a CyberTipline analyst opens the file to view it, because the actual viewing of the contents provides information additional to the information provided by the hash match.").

In *Keith*, the Court cited *Walter v. United States*, 447 U.S. 649 (1980), as a "better analog" than *Jacobsen*. 980 F. Supp. 2d at 43 (citing *Walter*, in which the Supreme Court held that the Federal Bureau of Investigation (FBI) violated the Fourth Amendment when it expanded, without a warrant, on a search by a private company; FBI officers viewed films a private company had not viewed before the private company, to which the films had mistakenly been shipped, turned the films over to the FBI). In *Keith*, the Court denied the motion to suppress, however, because other evidence supported probable cause, and because the good faith exception applied. *Keith*, 980 F. Supp. 2d at 45-47 (citing, *inter alia*, *United States v. Leon*, 468 U.S. 897 (1984)).

In *United States v. Miller*, No. 2:16-cr-00047-DLB-CJS, 2017 WL 2705963, at *1, 2017 U.S. Dist. Lexis 97074, at *1 (E.D. Ky. June 23, 2017), the Court distinguished *Keith*, and it denied a motion to suppress. In *Miller*, the record established that Google had employed a hash value system for reporting to NCMEC; that the hash value of the images at issue matched images a Google employee had previously examined and determined contained child pornography; and that neither Google nor NCMEC examined the image at issue before a law enforcement officer opened and examined it prior to obtaining a warrant. 2017 WL 2705963, at *1-2, 2017 U.S. Dist. Lexis 97074, at *2-5. The Court concluded that the governmental search did not expand beyond the private search by Google, because the law enforcement officer did not examine more than the images Google had previously opened and given a hash value. 2017 WL 2705963, at *6-8, 2017 U.S. Dist. Lexis 97074, at *18-24. The Court in *Miller* attempted to distinguish *Keith* on the basis that in *Miller*, "the evidence shows that Google previously viewed the images at issue and tagged them as apparent child pornography." 2017 WL 2705963, at *6, 2017 U.S. Dist. Lexis 97074, at *18. However, it appears the cases are not distinguishable in that way, because in *Keith*, as in *Miller*, the Court noted that hash values were generated only after an individual had reviewed the image and determined that it contained child pornography. *Keith*, 980 F. Supp. 2d at 36-37; *Miller*, 2017 WL 2705963, at *1-2, 2017 U.S. Dist. Lexis 97074, at *2-3.

In *United States v. Wilson*, No. 3:15-cr-02838-GPC, 2017 WL 2733879, at *3-4, 8-10, 2017 U.S. Dist. Lexis 98432, at *6-10, 20-26 (S.D. Cal. June 26, 2017), the Court, on facts similar in relevant respects to those in *Miller* (although the Court did not discuss *Miller*), concluded that "the government did not significantly expand upon Google's private search," and consequently there was no Fourth Amendment violation.

private search by Google included the opening and examination of the file. Any review of the file by NCMEC or law enforcement, therefore, would not be unlawful as it would have been within the scope of the private search. The record, therefore, would not support a finding of a Fourth Amendment violation even if the Court were persuaded that the Tenth Circuit's reasoning in *Ackerman* should control.

Finally, even if the Court were persuaded to apply the reasoning of *Ackerman* and even if the Court determined that the NCMEC search or law enforcement's pre-warrant review of the image exceeded the Google search, Petitioner would not have prevailed on a motion to suppress. The HSI special agent used information in Google's report, and not information he obtained through his review of the image, to identify Petitioner's town of residence and the name of his employer (i.e., the agent stated he used a telephone number identified in the report); the agent then learned that Petitioner had a prior conviction for possession of sexually explicit material of a minor under age 12, and that Petitioner was listed on the Maine sex offender registry. (Affidavit at 21-22.) Google's written description of the image file and the evidence of the prior conviction constitute probable cause. *See United States v. Farlow*, 681 F.3d 15, 18 (1st Cir. 2012) (noting that prior convictions, along with other evidence, provided probable cause for a search); *United States v. Wilder*, 526 F.3d 1, 7 (1st Cir. 2008) (concluding probable cause existed to search the defendant's residence for child pornography, based on his prior conviction for possession of child pornography and his recent paid subscription to a website depicting child pornography). In short, the affidavit filed in support of the initial search warrant

contained sufficient facts, without information obtained through the review of the file by NCMEC or law enforcement, to support a probable cause finding.

Because the facts set forth in the affidavit support a probable cause finding based on the report of Google's description of the image and the asserted facts regarding Petitioner's history, whether NCMEC or a law enforcement officer expanded Google's search in violation of the Fourth Amendment would not control the decision whether to suppress the evidence as was the case in *Ackerman*. That is, the report of Google's description of the image was not the product of the search of the file by NCMEC or law enforcement. Petitioner, therefore, cannot demonstrate prejudice even if the Court adopted the Tenth Circuit's reasoning.

### III. CONCLUSION

Based on the foregoing analysis, I recommend the Court find that the sole timely-asserted claim in Petitioner's motion to supplement is the claim that counsel failed to advise Petitioner on the alleged Fourth Amendment violation. I also recommend the Court find that an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 26th day of June, 2018.