UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:16-cr-4-NT |
| | ) | |
| KEVIN MILLETTE, defendant | ) | |

AMENDED MOTION AND MEMORANDUM IN SUPPORT OF
MOTION FOR COMPASSIONATE RELEASE

**I.   Introduction**

Kevin Millette, age 48, has a history of heart attacks including multiple surgeries and a stent, hypertension (high blood pressure), hyperlipidemia (high cholesterol), a body rash, depression, anxiety and related side effects. He was sentenced to ten years incarceration followed by seven years of supervised release on June 6, 2016 for possession of child pornography. ECF # 37. His BOP anticipated release date is 5/25/24. He is housed at FCI Danbury, CT. On May 19, 2020 Kevin filed a pro se request for companionate release pursuant to 18 U.S.C. § 3582(C)(1)(a) ECF# 68. He is in the Center for Disease Control (CDC) high risk category related to COVID-19. FCI Danbury has an outbreak of COVID-19 and there are inadequate safety measures in place to protect Kevin.

**II.   Kevin Millette and Medical Issues**

Kevin suffers from heart disease, having endured three heart attacks by the age of 38

1

with a 99 percent blockage in the frontal artery of his heart. Id. PSR ¶ 46. Exhibit 1, Medical Chronology. Doctors placed a stint there to keep the artery open. Id. Additionally Kevin suffers from high blood pressure and high cholesterol, and is currently on 20mg Atorvastatin for cholesterol, 5mg of Lisinopril for high blood pressure, and 25mg of carvedilol for high blood pressure and elevated heart rate. Id. at 46, 48. In 2008 or 2009 Kevin was diagnosed with depression and prescribed Celexa. Id. at 49, In 2015 he was diagnosed with a mood disorder and a personality disorder after attempting suicide. Id. at 51. These underlying problems put him at high risk around the COVID-19 virus. Defendant is at additional risk because he is taking 40mg of prednisone to help fight a full body rash present since March 2020. Prednisone, a steroid, lowers a person's immune system, slowing his body's ability to respond to a virus.

### III.     Extraordinary and Compelling Reasons for Release

The Department of Justice has recently agreed that inmates with medical conditions meeting the Centers for Disease Control and Prevention (CDC) list as a risk factor for contracting a more severe form of COVID-19. The Government has presented this to the Seventh Circuit in their Unopposed Motion for Remand, *U.S. v. Garcia*, #20-1716 (7th Cir. 6/8/20) pp. 7-8. Exhibit 2.

> Garcia has presented an "extraordinary and compelling" reason for release as defined in the application notes to section 1B1.13. Specifically, given the COVID-19 pandemic, Garcia has shown that he is "suffering from a serious

> . . . medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," even if that condition in ordinary times would not allow for compassionate release. U.S.S.G. § 1B1.13, comment. (n.1(A)(ii)). Garcia is diabetic, and the Centers for Disease Control and Prevention lists diabetes as a risk factor for contracting a more severe form of COVID-19. Centers for Disease Control and Prevention, People Who Are at Higher Risk for Severe Illness, May 14, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The government's position in this case is consistent with the recent position taken by the Department of Justice's Office of the Solicitor General. See Reply in Supp. of Application for Stay, *Williams v. Wilson*, No. 19A1047, at 18, n.4 (June 4, 2020).
>
> The United States therefore concedes that Garcia has presented an "extraordinary and compelling" reason for his release within the framework of section 3582(c) and the Guidelines, but requests that this Court remand the case so that the district court may weigh the section 3553(a) factors and consider in the first instance whether, as the United States argued below and maintains, Garcia presents a danger to another individual or the community such that he should not be released.

**Garcia** pp. 7-8.

The CDC finds "serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension, may put people at higher risk for severe illness from COVID-19." The CDC also lists people with a

weakened immune systems at a higher risk.[1] Kevin suffers from serious heart conditions including having three heart attacks, surgical intervention with a stent implant, continued high blood pressure and high cholesterol and a weakened immune system. Exhibit 1. Kevin satisfied the DOJ's position of an "extraordinary and compelling" reason for his release within the framework of section 3582(c) and the Guidelines. Kevin's request to the Warden for compassionate release on April 29th was denied according the Court the jurisdiction to grant him compassionate release. Exhibit 2.

Except for those factors explicitly mentioned, Courts are left to decide on their own what additional factors might be considered "extraordinary and compelling reasons" to grant a defendant early release under the final statute's "catch-all" provision. Congress left two clarifying elements in the sentencing guidelines to help advise judges in their decision-making. First, extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing." § 1B1.13 cmt. n.2. Second, rehabilitation, although "not, by itself, an extraordinary and compelling reason," may be considered with other factors. See § 1B1.13 cmt. N.3; see also 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Because the Commission has not updated its policy since ratification of the First Step Act, many courts

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

have concluded that the "the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief." *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (treating "the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts"). The district court may consider anything that the BOP could have considered when assessing a defendant's motion. The onset of the COVID-19 pandemic has only increased the number of courts that have adopted this position. See e.g. *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331(E.D. Pa. Apr. 1, 2020); *United States v. Scott*, No. 17-CR-156, 2020 WL 2508894 (E.D. Wis. May 15, 2020).

**IV.     Additional Factor of COVID-19**

The COVID-19 pandemic and disproportionally high impact on the prison system nation-wide, has courts across the country concluding "that 'extraordinary and compelling' circumstances exist when an incarcerated defendant suffers from health conditions that make him particularly susceptible to serious complications should he contract COVID-19." *United States v. Howell*, No. 3:17-CR-151 (SRU), 2020 WL 2475640, at *3 (D. Conn. May 12, 2020). The Department of Justice now agrees. *Garcia*; *Wise v. United States*, No. CR ELH-18-72, 2020 WL 2614816, at *7 (D. Md. May 22, 2020) ("[T]he Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with

severe illness from COVID-19 are eligible for compassionate release.").[2] Deterioration of mental health, when coupled with COVID-19, is a strong factor in granting compassionate release. See *United States v. Johnson*, No. 15-cr-125, 2020 WL 2515856 (D.D.C. May 16, 2020) (granting compassionate release due to increased vulnerability to COVID-19 flowing from grievous mental health conditions); *Doe v. Barr*, No. 20-cv-02263 (RMI), 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020) (ordering the release of a foreign national, detained in a county jail awaiting for his removal proceedings because he suffers from PTSD and "[g]rowing evidence demonstrates that PTSD, anxiety/stress, and depression can lead to decreased immune response and increased risk of infections" and thus "compound his susceptibility to COVID-19").[3] Kevin has these additional mental health stressors.

## V.     FCI Danbury

Kevin states as of May 19th, four inmates in his housing unit tested positive for the

---

[2] See also, *United States v. Atkinson*, 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) ('The presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means' to include Covid-vulnerability coupled with the inability to practice CDC-recommended procedures to safeguard against transmission); *U.S. v. Esparza*, 2020 WL 1696084, at * (D. Idaho Apr. 7, 2020) (same); see also Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), *United States v. Hird*, Case No. 2:13-cr-39-TJS, Dkt. No. 650 (E.D. Pa. May 19, 2020) (government concession that "the risk of COVID-19" to a vulnerable inmate "presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility'").

[3] See also *Durel B. v. Decker*, No. CV 20-3430 (KM), 2020 WL 1922140 (D.N.J. Apr. 21, 2020); *Fraihat v. ICE*, No. 5:19-cv-1546 (JGB), slip op. at 21 n.20, 22 n.21 (C.D. Cal. Apr. 20, 2020); *Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667 (N.D. Cal. Apr. 12, 2020).

virus. Pro-se filing ECF 68 at 8. As of May 29th, FCI-Danbury was recognized as "a hotbed of COVID-19 in the federal prison system." *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *9 (W.D. Pa. May 29, 2020). (quoting *United States v. Valencia*, No. 15-163, 2020 WL 2319323, at *7 (S.D.N.Y. May 11, 2020)); see also *United States v. Cassidy*, No. 17-116, 2020 WL 2465078, at *6 (W.D.N.Y. May 13, 2020) ("[T]here have been difficult-to-control 'hotspots.' FCI Danbury is one of them."); *United States v. Mel*, No. 18-0571, 2020 WL 2041674, at *2 ("Although the presence of the historic COVID-19 pandemic in prisons arguably could alone establish extraordinary and compelling reasons, Mel has been incarcerated at FCI-Danbury, one of the hardest hit federal prisons."); *Martinez-Brooks v. Easter*, No. 20-569, 2020 WL 2405350 (D. Conn. May 12, 2020) at *20 ("It is undisputed that there is an active and serious outbreak of COVID-19 at FCI Danbury."). In a memorandum from the Attorney General's Office, Attorney General Barr described FCI-Danbury as requiring emergency action due to "significant levels of infection," and recommended the removal of "vulnerable inmates out of these institutions." See Office of the Attorney General, Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020).

The BOP reports as of June 16, 2020 nationwide 17,262 inmates have been tested yielding 6,069 positives with 2,266 still waiting for results.[4] That is a 40% positive rate for

---

[4] https://www.bop.gov/coronavirus/
The BOP has 133,384 federal inmates in BOP-managed institutions and 13,092 in community-based

those tested with results. In comparison, the positive rate in Maine after 73,000 tests is 4.39%.[5] Maine has 2,836 cumulative COVID-19 cases, 102 deaths and 2,275 recoveries with the vast majority of the deaths among those over age 70. Id. Compare Maine's 102 deaths for 1.2 million people to 85 BOP inmate deaths for 147,000 people.

## VI. Kevin is Not a Danger to the Community

Kevin has no history of violence. His one prior State charge was Possession of Sexually Explicit Materials of Minor Under 12 for which he served 90 days in jail and successfully completed two years of probation. PSR, 33. Kevin has never created improper images nor ever inappropriately touched a child. PSR, 10. Kevin has been a good father and each of his children look forward to his return. Exhibit 4. He will live with his mother if released as he had before the arrest in this case. PSR ¶ 43. His brother has a job for him. Id. He has completed the year long Celebrate Recovery 12 step program. Id. He has the support of his ex-wife. Exhibit 4. Supervised release is seven years. Special conditions of supervised release require Kevin to participate in sex offender treatment, and to comply with the Computer and Internet Monitoring Program (which may include partial or full restriction of

---

facilities. The BOP staff complement is approximately 36,000. There are 1,209 federal inmates and 168 BOP staff who have active confirmed positive test results for COVID-19 nationwide. Currently, 4,940 inmates and 502 staff have recovered. There have been 85 federal inmate deaths and 1 BOP staff member death attributed to COVID-19 disease.

[5] https://www.pressherald.com/2020/06/17/maine-cdc-reports-another-death-17-new-covid-19-cases/

computer(s), internet/intranet, and/or internet-capable devices). Judgement p. 4. ECF #37. He will be required to submit to periodic or random unannounced searches of any computer(s), storage media, and/or other electronic or internet-capable device(s) by the probation officer. Id. These requirements are further protection as both preventive and reformative featuring (1) direct supervision and accountability from the probation officer, and (2) therapeutic treatment addressing the psychological issues causally related to Kevin's past conduct.

**VII.   Similar Cases**

Judges across the county have granted release to inmates in the wake of the COVID-19 pandemic and the First Step Act amendments to 18 U.S.C. § 3582(c)(1)(A). These include those convicted of child pornography offenses. The BOP has not updated its companionate release policy since the onset of the pandemic.[6] The Sentencing Commission, lacking a quorum, has not updated advisory guideline 1B1.13 since the December, 2018 passage of the First Step Act. A survey of cases show many granting release in child pornography cases.

- *United States v. Adam Field*, No. 18 Cr. 426 (JPO), Dkt. No. 38 (S.D.N.Y. May 4, 2020) (granting CP defendant with hypertension and "nonphysical health conditions" incarcerated at FCI Danbury compassionate release).

- *United States v. Sawicz*, No. 08-cr-287, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020)

---

[6] Program Statement 5050.50 1/17/19.

(releasing child-pornography offender with hypertension incarcerated at FCI Danbury with less than 5 months left on his sentence).

- *United States v. Nicholas Pagliuca*, 17 Cr. 432 (CS), Dkt. No. 63 (S.D.N.Y. May 18, 2020) (granting 69-year-old CP defendant with diabetes and heart issues compassionate release after serving 80 percent of 36-month sentence).

- *United States v. Pippin*, No. 16-cr-266, ECF No. 122 (W.D. Wash. May 20, 2020)(granting compassionate release to a 50-year-old child pornography defendant with "multiple chronic medical conditions" who had 28 months left on an 84 month sentence and was serving his time at FCI Lompoc.)

- *United States v. Kurtz*, 16-cr-20036, ECF No. 40 (D. Kan. May 12, 2020) (granting compassionate release to 73-year-old CP defendant hospitalized with COVID-19).

- *United States v. Connell*, 2020 WL 2315858, (N.D. Cal. May 8, 2020) (granting compassionate release to 69-year-old CP defendant with numerous chronic conditions serving year-and-a-day sentence at USP Lompoc).

- *United States v. Fischman*, No. 16-cr-00246-HSG, 2020 WL 2097615 (N.D. Cal. May 1, 2020) (granting compassionate release to 72-year-old convicted of possession of child pornography who had tested positive for COVID-19 and was incarcerated at Terminal Island).

- *United States v. Dillard*, Case No. 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27, 2020) (53-year-old with serious health problems granted compassionate release after

    serving approximately half of 87-month sentence for a second federal child pornography possession offense).

- *United States v. Carter*, 1:16-cr-156 (D.D.C.), ECF # 48 (6/10/20)(second offender age 76 has served 48 months of an 80 month sentence, has 10 years of supervised release and tested positive for COVID-19 but remained asymptomatic. Will reside with his sister on release and did well on previous supervision. "[I]n sentencing Carter, the court did not intend for his sentence to "'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." *United States v. Zukerman*, No. 16-cr-194, 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (quoting *United States v. Rodriguez*, No. 03-cr-271, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)).

**VIII. Conclusion**

    A federal court may modify an imposed term of imprisonment where, as here, "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Kevin Millette has serious cardiac conditions, high blood pressure, compromised immunity and continuing anxiety and depression. He has a full body rash since March, 2020 which has not responded to the steroid treatment at the prison. He is housed at a facility that has seen a significant virus outbreak and remains in a battle with limiting the

virus's spread. Kevin poses no risk to the community if relief is granted. He has a release plan of living with his mother ans the support of friends and family. Similarly situated inmates across the county have been granted release. Kevin has served has served over half his sentence. He has been in custody since 11/18/15 with a BOP projected release date of 5/25/24. He will be on supervision for seven years after release with conditions. We ask the court to grant the motion reducing Kevin Millette's term of imprisonment to "time served," followed by the seven year term of supervised release previously imposed to begin immediately upon his release.

DATE: June 17, 2020                                    /s/ *David Beneman*
                                                       David Beneman
                                                       Attorney for Kevin Millette

David Beneman
Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

I, **David Beneman**, Federal Defender for the District of Maine, hereby certify that I have served, electronically, a copy of the within "**AMENDED MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE**" upon **Craig Wolff**, Assistant United States Attorney, United States Attorney's Office, Portland, ME and all counsel of record via the ECF system and on **Kevin Millette** via U.S. mail addressed: Kevin Millette #11500-036, FCI Danbury, ROUTE 37, DANBURY, CT 0681.

Dated: June 17, 2020                                   /s/ *David Beneman*
                                                       David Beneman