## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 2:16-cr-00004-NT |
| | ) | |
| KEVIN MILLETTE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

The Defendant Kevin Millette filed a *pro se* motion for compassionate release on May 19, 2020 (ECF No. 68). After reviewing the motion, I appointed counsel to represent the Defendant (ECF No. 71). Appointed counsel filed the pending amended motion for compassionate release ("**Def.'s Am. Mot.**") (ECF No. 74), which the Government opposes (ECF No. 75). I have also considered the Government's supplemental memoranda (ECF Nos. 76, 85), the Defendant's supplemental memorandum (ECF No. 84), and the Defendant's reply briefs (ECF Nos. 77, 86). For the reasons that follow, the Defendant's amended motion for compassionate release (ECF No. 74) is **GRANTED**.

## PROCEDURAL BACKGROUND

On January 28, 2016, the Defendant pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Presentence Investigation Report ("**PSR**") ¶ 4 (ECF No. 70-1). On June 6, 2016, I sentenced Mr. Millette to the mandatory minimum term of 120 months imprisonment, followed by

84 months of supervised release, and I ordered him to pay $39,000 in restitution. Judgment (ECF No. 37).

Mr. Millette is incarcerated at the Federal Correctional Institution, Danbury, ("**FCI Danbury**"). Mr. Millette first requested compassionate release from the Warden, but this request was denied. Def.'s Am. Mot. Ex. 3, at 1 (ECF No. 74-3). Mr. Millette's request for reconsideration of the Warden's decision was also denied. Def.'s Am. Mot. Ex. 3, at 2–5. The Government acknowledges that Mr. Millette has exhausted his administrative remedies. Gov't Resp. to Def.'s Mot. for Compassionate Release ("**Gov't Opp'n**") 7 (ECF No. 75).

## ANALYSIS

Congress enacted the compassionate release statute[1] to allow district courts to modify sentences of imprisonment, as relevant here, upon finding that:

---

[1]     Title 18, United States Code, Section 3582(c)(1)(A) governs "[m]odification of an imposed term of imprisonment." Prior to the passage of the First Step Act of 2018, only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of an imposed term of imprisonment from the courts directly. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

2

(1) extraordinary and compelling reasons warrant modification, (2) the modification accords with the § 3553(a) sentencing factors, and (3) the modification is consistent with "applicable policy statements" of the Sentencing Guidelines. In addition, Mr. Millette must provide an adequate plan for release. I address each part of the analysis in turn.

## I.    Extraordinary and Compelling Circumstances

Mr. Millette is a 48-year-old man with several chronic health conditions, including heart disease. Def.'s Am. Mot. 1–2. Mr. Millette suffered three heart attacks before his 39th birthday and has a stent implanted in an artery. Def.'s Am. Mot. 1–2; PSR ¶ 46. Additionally, Mr. Millette is obese and suffers from hypertension, high cholesterol, and various mental health conditions. Def.'s Supp. Mem. Supporting Mot. for Compassionate Release ("**Def.'s Supp. Mem.**") 2 (ECF No. 84); PSR ¶¶ 46, 51; Def.'s Medical Chronology (ECF No. 74-1).

Mr. Millette's medical conditions increase his risk of severe illness from COVID-19. The Centers for Disease Control and Prevention caution that individuals with certain underlying medical conditions, including "heart conditions" are at "increased risk of severe illness from the virus that causes COVID-19." *See* Centers for Disease Control and Prevention, "COVID-19 (Coronavirus Disease), People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 21, 2020) (emphasis deleted). Individuals with hypertension also "might be at an increased risk." *Id.* (emphasis deleted). In addition, the Government now concedes that Mr. Millette's obesity, at the very least, "presents an extraordinary and compelling reason

3

that may warrant compassionate release." Resp. to Def.'s Supp. Mem. Supporting Mot. for Compassionate Release ("**Gov't Supp. Opp'n**") 1 (ECF No. 85). I find that Mr. Millette's medical conditions likely make him more susceptible to complications from COVID-19.

FCI Danbury is reporting as of December 21, 2020, that there are ninety-five inmates and zero staff testing positive for COVID-19. Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Dec. 21, 2020). FCI Danbury was the site of an early, severe COVID-19 outbreak last spring. Def.'s Am. Mot. 7. And the rapidly increasing numbers indicate that FCI Danbury may be on the verge of a second outbreak. The prison's ninety-five current inmate infections are up from twenty-three inmate infections as recently as December 8, and five inmate infections one week prior. Status Report ¶ 2 (ECF No. 81). FCI Danbury also reports that eighty-two inmates and sixty-nine staff have recovered from COVID-19 and that one inmate died from the virus.

The Government describes all that the Bureau of Prisons ("**BOP**") has done to try to prevent and contain the spread of COVID-19 within the walls of the federal prison system. Gov't Opp'n 2–6. I do not opine on the adequacy or effectiveness of these efforts. However, it speaks for itself that inmate infections at FCI Danbury have more than quadrupled since last week, this being after last week's numbers more than quadrupled from the week before. This is paradigmatic exponential growth. While the BOP may well be doing everything within its power to combat the spread of COVID-19 at FCI Danbury, it is apparent that these efforts are insufficient under

the circumstances. Rather than serve as evidence in support of the Government, this is evidence in support of the Defendant, because it shows that even despite BOP's best efforts, the virus is spreading rapidly at FCI Danbury. Mr. Millette's medical conditions, coupled with the increasing number of infections at FCI Danbury, constitute an extraordinary and compelling reason for release.

Because I find that Mr. Millette has established extraordinary and compelling reasons for a modification of his sentence, I go on to consider the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A).

## II.   Applicable 3553(a) Factors[2]

When I originally sentenced Mr. Millette for violating 18 U.S.C. § 2252A(a)(5)(B), his prior state conviction for Possession of Sexually Explicit Materials of Minor Under 12 triggered a ten-year mandatory minimum, pursuant to 18 U.S.C. § 2252A(b)(2). While I considered the § 3553(a) factors as I am always required to do, because of my obligation to impose the ten-year mandatory minimum, the § 3553(a) factors were somewhat beside the point. *See* PSR ¶ 33; 18 U.S.C. § 2252A(b)(2). I now review what I consider to be the applicable § 3553(a) factors in the context of the Defendant's motion.

---

[2]     The parties do not address the 3553(a) factors in their briefing other than whether Mr. Millette poses a danger to the community if released. Gov't's Resp. to Def.'s Mot. for Compassionate Release 15–16 (ECF No. 75); Resp. to Def.'s Supp. Mem. Supporting Mot. for Compassionate Release 2–3 (ECF No. 85); Am. Mot. & Mem. in Support of Mot. for Compassionate Release 8–9 (ECF No. 74); Def.'s Supp. Mem. Supporting Mot. for Compassionate Release 5–7 (ECF No. 84).

### A.   Need for the Sentence to Reflect the Seriousness of the Offense & Provide Adequate Deterrence

I begin with the seriousness of the offense. There is no question that the possession of child pornography, particularly after a previous conviction for the same type of crime, is serious. The circulation of child pornography "is intrinsically related to the sexual abuse of children" and is itself harmful, separate and apart from the hands-on sexual abuse of a child. *New York v. Ferber*, 458 U.S. 747, 759–60 (1982). Mr. Millette's crime involved downloading images and videos of minors engaged in sexual conduct, and he possessed a significant number of images and videos. PSR ¶¶ 5–11. While extremely serious, there was no evidence that Mr. Millette ever committed a contact offense or groomed a child with the intent to commit one. In addition, Mr. Millette fully accepted responsibility for his crime even before he was charged in this case. PSR ¶ 10.

Mr. Millette has already served over five years in prison. The BOP, having considered deductions for good conduct, lists a projected release date of May 25, 2024. Sentence Monitoring Computation Data (ECF No. 74-1). Accordingly, Mr. Millette has served almost fifty-one percent of the sentence I imposed and almost sixty percent of his sentence if good-time deductions are factored in. At the time that I sentenced Mr. Millette to a term of imprisonment, prison posed no greater risk to his well-being than to the average criminal defendant. Now, prison has become a more dangerous place for Mr. Millette given his health conditions and given that prisons, by their nature, put those who are incarcerated at a heightened risk of infection. *See United States v. Telson*, Case No. 16-80178-CR, 2020 WL 5742624, at *3 (S.D. Fla. Sept. 21,

2020) ("Due to the conditions under which inmates live, they are at extreme risk of infection once COVID-19 breaches prison walls."). When I originally sentenced Mr. Millette, I "did not intend for his sentence to 'include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic.' " *United States v. Carter*, No. 16-cr-156 (TSC), 2020 U.S. Dist. LEXIS 208639, at *3 (D.D.C. June 10, 2020) (quoting *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020)); *United States v. Weikel*, Criminal Case No. 16-20659, 2020 WL 6701914, at *5 (E.D. Mich. Nov. 13, 2020) ("While the nature of Weikel's offense was undeniably serious, it did not merit a death sentence . . . .").

I find that under these circumstances, a sentence of sixty-one months is a significant sentence that adequately reflects the seriousness of the crime and affords adequate deterrence.

## B.    History and Characteristics of the Defendant

The § 3553(a) factors also require an examination of the history and characteristics of the Defendant. Mr. Millette was born out of wedlock, and he never met his biological father. PSR ¶ 39. His mother's first husband physically abused him. PSR ¶ 40. He was sexually molested at the age of two by a family member and again between the ages of six and nine by a neighbor. PSR ¶ 41. Mr. Millette has a history of medical and mental health problems, including the heart conditions discussed above, but he also suffers from depression and suicidality. PSR ¶¶ 45–51.

Besides his prior state child pornography conviction, for which he received a ninety-day term of incarceration and two years of probation (resulting in two criminal history points), Mr. Millette's only prior criminal history involved minor traffic-type

7

offenses from his teenage years (resulting in no criminal history points). PSR ¶¶ 30–33. Further, Mr. Millette has had no disciplinary infractions while at BOP, and he has continued to rehabilitate himself, completing BOP's year-long Celebrate Recovery program and forty-week Resolve Program. Def.'s Am. Mot. 8; Def.'s Reply to Gov't Resp. 1 (ECF No. 86).

### C.      Protection of the Public

Section 3553(a)(2)(B) requires me to consider the need to protect the public from further crimes of the defendant.  As discussed above, Mr. Millette's offense is serious, but he does not pose as significant a danger to the community as someone with a history of grooming children or touching them.

It is also significant that Mr. Millette has acknowledged that his proclivity for child pornography is problematic. And he did so at the time of his first contact with law enforcement in this case. This distinguishes Mr. Millette from many other child pornography offenders who refuse to recognize the harm caused by their conduct and who minimize their illicit and unacceptable behavior.

Robust supervised release conditions can be deployed to alleviate concerns as to the safety of the community. There are numerous conditions of supervised release that will help protect the community, including an internet monitoring program, participation in a sex offender treatment program, and regular polygraph examinations. Judgment 4. Further, Mr. Millette's probation officer has the authority to conduct searches based on reasonable suspicion, and failure to submit to such a search constitutes grounds for a revocation of supervised release. These conditions of supervised release, as well as the supervision by Mr. Millette's mother, with whom

8

he intends to live, will minimize the risks associated with the possibility that he will again seek out child pornography. In addition, I am imposing an additional condition of supervised release that will strictly limit his contact with minors.

Congress did not write child pornography offenders out of the compassionate release statute.[3] Nor did Congress exempt prisoners serving a mandatory minimum sentence of imprisonment from the ability to seek compassionate release.[4] With adequate conditions of supervised release, I can effectively mitigate the risk that Mr. Millette will reoffend. In the event that he does return to his past conduct, I, of course, retain the power to revoke his supervised release and return him to prison.

---

[3]       It is worth noting that multiple courts across the country have granted compassionate release to defendants who committed child pornography or other sexual offenses after determining that the defendants were at great risk for serious complications if they were infected with COVID-19. *See, e.g.*, *United States v. Hosek*, CR. 16-50111-JLV, 2020 WL 7318107, at *5–7 (D.S.D. Dec. 11, 2020) (sixty-five-year-old child pornography offender with family history of disease who had served approximately fifty-five percent of his sixty-month sentence); *United States v. Weikel*, Criminal Case No. 16-20659, 2020 WL 6701914, at *5–6 (E.D. Mich. Nov. 13, 2020) (sixty-eight-year-old child pornography offender with cardiovascular issues who had served slightly more than half of his ninety-six-month sentence); *United States v. Telson*, Case No. 16-80178-CR, 2020 WL 5742624, at *5–6 (S.D. Fla. Sept. 21, 2020) (child pornography offender with hypertension who had served approximately fifty-seven percent of his eighty-four-month sentence); *United States v. Lockhart*, No. 11 CR 231 (SJ), 2020 WL 4333010, at *3–4 (E.D.N.Y. July 29, 2020) (child pornography offender who had prior conviction for attempted rape where defendant had multiple health issues and had served approximately seventy-five percent of his 120-month sentence); *United States v. Watson*, Case No. 3:18-cr-00025-MMD-CLB-1, 2020 WL 4251802, at *3–4 (D. Nev. July 22, 2020) (child pornography offender with various health conditions who had served less than thirty percent of his forty-eight-month sentence); *United States v. Moit*, No. 2:17-CR-83-PPS, 2020 WL 4558953, at *3 (N.D. Ind. June 29, 2020) (child pornography offender with various health conditions who had served less than forty percent of his 108-month sentence); *United States v. Curtis*, Criminal Action No. 03-533 (BAH), 2020 WL 1935543, at *5–6 (D.D.C. Apr. 22, 2020) (member of sex trafficking ring with various health conditions who had served seventeen years of his life sentence).

[4]       *See United States v. Bess*, 455 F. Supp. 3d 53, 67 (W.D.N.Y. 2020) ("[T]his Court finds no indication in the text of section 3582(c)(1)(A) that courts are limited to offering compassionate release only to those inmates who have satisfied their statutory-minimum terms of incarceration."). The Government has not argued that Mr. Millette is ineligible for compassionate release because he has not completed his mandatory minimum sentence, and I consider any argument to that effect to be waived.

9

### D.      The Sentencing Guidelines

Section 3553(a)(4) directs me to consider the sentencing guidelines. Mr. Millette, who had a total offense level of 28 and fell in a criminal history category II, PSR ¶¶ 28, 34, would have faced a sentencing guidelines range between 87 and 108 months,[5] *see* U.S. Sentencing Guidelines Manual ch. 5, pt. A (U.S. Sentencing Comm'n 2014). Because of his prior state conviction, Mr. Millette's guideline range became the statutory minimum of 120 months. In addition, the United States Probation Office identified Mr. Millette's own history of sexual abuse as a child, history of depression and suicide attempts, his substance abuse history, and his medical conditions to be factors supporting a variance below the guideline range. PSR ¶ 79.

### E.      Unwarranted Sentencing Disparities

Section 3553(a) also requires consideration of the need to avoid unwarranted sentencing disparities. There is significant variation in the charging of individuals who possess child pornography within the District. Just last month, the Government chose not to charge a person who had previously been convicted of possession of child pornography after he had been caught possessing a flash drive containing child pornography while on supervised release. *See* Stipulation & Agreement, *United*

---

[5]      Even at the time of his original sentence, the guidelines for child pornography possession cases had come under criticism as being unduly harsh and not focused on particularly relevant factors, such as whether the defendant had ever had sexual contact with a minor. The United States Sentencing Commission has recognized that the sentencing guidelines are not working as intended in the context of offenders who commit non-production child pornography offenses and that § 2G2.2 of the Guidelines warrants revision. Presentence Investigation Report ("**PSR**") ¶ 80 (ECF No. 70-1). This is because there are certain specific offense characteristics enhancements, such as use of a computer, that apply in virtually every case, with the end result that the guideline range for most offenders approaches or exceeds the statutory maximum. PSR ¶ 80.

*States v. Whittenburg*, No. 2:14-CR-82-NT, ECF No. 71 (D. Me. Nov. 4, 2020). In that case, the Government opted to treat the matter as a violation of the defendant's conditions of supervised release for which the Government recommended a sentence of twenty-four months. *See id.* Had the Government instead pursued that case as a second child pornography offense, it could have triggered the ten-year mandatory minimum. *See* 18 U.S.C. § 2252A(b)(2). I understand that the Government often possesses more information than the Court, and I am not criticizing the Government's charging decisions. But there exists a wide range of sentences being imposed on individuals convicted of possessing child pornography.

In light of the above, I conclude that a sixty-one-month term of imprisonment accords with the § 3553(a) factors.

## IV. Consistency with Applicable Policy Statements by the Sentencing Commission

The United States Sentencing Commission's policy statement on compassionate release is found at § 1B1.13 of the sentencing guidelines. The Sentencing Commission, which has not had a quorum since the second quarter of fiscal year 2019, U.S. Sentencing Comm'n, *Annual Report* 2–3, 2018, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/2018-Annual-Report.pdf, has not revised § 1B1.13 in light of the passage of the First Step Act of 2018 (the "**First Step Act**"), *see United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). Because the compassionate release statute only directs courts to consider "*applicable* policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(ii) (emphasis added), I need only

consider § 1B1.13 if it is in fact "applicable" to a compassionate release motion filed by a prisoner rather than by the BOP, *see United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020).[6]

There is a "growing consensus in the district courts" that § 1B1.13 does not control where a compassionate release motion is filed by a prisoner. *United States v. McCoy*, No. 20-6821, --- F.3d ---, 2020 WL 7050097, at *7 (4th Cir. Dec. 2, 2020). *But see United States v. Hudec*, Criminal No. 4:91-1-1, 2020 WL 4925675, at *4 (S.D. Tex. Aug. 19, 2020); *United States v. Baye*, 464 F. Supp. 3d 1178, 1189–90 (D. Nev. 2020) ("While the First Step Act expanded the scope of who could bring [§ 3582(c)(1)(A)] motions, it did not affect the rest of [§ 1B1.13], including how the [Sentencing] Commission defined 'extraordinary and compelling reasons,' nor its partial delegation of this authority to the [BOP] Director."). This Court and three others in the First Circuit are a part of that "growing consensus." *See United States v. Calhoun*, No. 2:15-cr-00056-JDL-1, 2020 U.S. Dist. LEXIS 117527, at *3 (D. Me. July 1, 2020) ("[T]he Court's authority to grant compassionate release is not limited by the policy statement's definition of 'extraordinary and compelling reasons' warranting a reduction in sentence under 18 U.S.C.A. § 3582(c)(1)(A)(i) after the First Step Act."); *United States v. Nelson*, Case No. 12-cr-111-PB-1, 2020 WL 6275232, at *1 (D.N.H. Oct. 26, 2020) (concluding the same); *United States v. Vigneau*, C.R. No. 97-cr-33-JJM-LDA, 2020 WL 4345105, at *3 (D.R.I. July 21, 2020) ("Because the Sentencing

---

[6]     Section 1B1.13 is "[t]he only policy statement that possibly could be 'applicable' " to Mr. Millette's compassionate release motion. *See United States v. McCoy*, No. 20-6821, --- F.3d ---, 2020 WL 7050097, at *7 (4th Cir. Dec. 2, 2020).

Commission's policy statement section 1B1.13 and Application Notes are now incompatible with the statute itself, the Court need not follow the outdated portion of this commentary that is contradictory to federal law."); *United States v. Pena*, 463 F. Supp. 3d 118, 127 (D. Mass. 2020) (describing the requirement of subdivision D that the BOP determine that an extraordinary and compelling reason exists as "vestigial and inoperative" after the First Step Act). The circuit courts to have addressed the issue agree that § 1B1.13 does not apply to motions filed by a prisoner. *See McCoy*, 2020 WL 7050097, at *7 ("By its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the [BOP] Director, not motions by prisoners."); *Jones*, 980 F.3d at 1109 ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."); *Brooker*, 976 F.3d at 235–37 ("Turning to the text of Guideline § 1B1.13, it is manifest that its language is clearly outdated and cannot be fully applicable.").

I agree with this "growing consensus" that § 1B1.13 is not an "applicable" policy statement, particularly since it does not reflect the Sentencing Commission's views in light of the passage of the First Step Act. Regardless of whether § 1B1.13 is "applicable," it still provides helpful guidance on how to analyze compassionate release requests. But the guidance that it offers in the prisoner-initiated motion context is almost entirely encompassed by the statutory mandate of § 3582(c). For

prisoners under seventy years old, § 1B1.13 requires a court to consider whether extraordinary and compelling reasons warrant a reduction, but § 3582(c) already mandates the same inquiry. *Compare* U.S. Sentencing Guidelines Manual § 1B1.13, *with* 18 U.S.C. § 3582(c)(1)(A)(i). Section 1B1.13 next requires consideration of whether a defendant is "a danger to the safety of any other person or to the community," but this is already a factor in the § 3553(a) analysis required by § 3582(c)(1)(A). *Compare* U.S. Sentencing Guidelines Manual § 1B1.13, *with* 18 U.S.C. § 3582(c)(1)(A), *and* 18 U.S.C. § 3553(a)(2)(C). Finally, § 1B1.13 requires that any reduction be "consistent with this policy statement," but this requirement is a nullity, because it is tautologically defined as being any motion filed by the BOP Director that is otherwise "consistent with this policy statement." *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.5.

An advisory note to § 1B1.13 contains helpful guidance as to what constitutes an "extraordinary and compelling reason" warranting release. *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 1 (U.S. Sentencing Comm'n 2018). But because the Government concedes that there exist extraordinary and compelling reasons in this case, whatever guidance Application Note 1(D) provides is beside the point.

## V.    Plan for Release

Finally, I must consider the acceptability of Mr. Millette's release plan. I conclude that Mr. Millette has established an acceptable release plan. He intends to live with his parents in Alfred, Maine, on a three-acre property solely occupied by his parents. Def.'s Supp. Mem. 5. Mr. Millette's parents are aware of his criminal history and can provide some level of supervision. There is no working computer in the home,

nor are there any current subscriptions to a video streaming service.[7] Def.'s Supp. Mem. 5. Mr. Millette's brother has also offered him employment, which will allow Mr. Millette to begin to pay the $39,000 in restitution that he owes. Def.'s Supp. Mem. 6. Mr. Millette's mother is also retired, so she can drive him to any counseling, treatment, or medical appointments. Def.'s Supp. Mem. 6. This is a release plan that will allow for adequate supervision of Mr. Millette and that will allow him to fulfill all conditions of his supervised release.

## CONCLUSION

For the foregoing reasons, the Defendant's Amended Motion for Compassionate Release (ECF No. 74) is **GRANTED**. The Defendant's sentence is reduced to time served, and the Defendant is **ORDERED** released within twenty-one days of the date of this order upon the completion of any quarantine and COVID-19 testing protocols required by the BOP. Upon release from custody, the Defendant will complete the remainder of his sentence, including his eighty-four-month term of supervised release, as outlined in the original Judgment of this Court on June 6, 2016 (ECF No. 37). In accordance with 18 U.S.C. § 3583(e), I am also modifying Mr. Millette's supervised release conditions to include the following additional term: The defendant shall not associate, or have verbal, written, telephonic or electronic communication, with persons under the age of eighteen, except in the presence of a

---

[7] The Government correctly points out that "[a]n offender seeking child pornography needs only a . . . device that has . . . a cellular connection to the internet" and does not necessarily need access to a home computer. Resp. to Def.'s Supp. Mem. Supporting Mot. for Compassionate Release 2 (ECF No. 85). However, in my view, this potential harm will be mitigated through the strict conditions of supervised release that I have imposed.

responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the probation officer. This restriction does not extend to incidental contact during ordinary daily activities in public places.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: December 21, 2020